

# COMPLIANCE EVALUATOR REPORT

April 2026

O'Toole Associates, LLC

www.spdcomplianceteam.com

# Table of Contents

**Statement of Lead Compliance Evaluator**     3

**Progress Report on Specific Paragraphs**     5

**Sustainment Plan**     8

**Motion to Terminate**     9

**Conclusion**     10

**Appendix**     11

    A.  **Compliance Evaluator Team Biographies**
    B.  **The Settlement Agreement**

# Statement of Lead Compliance Evaluator

On behalf of the Compliance Evaluator Team ("CET"), I am pleased to present this final bi-annual report concerning the Settlement Agreement between the United States Department of Justice ("DOJ") and the City of Springfield, Massachusetts ("City"), filed on April 13, 2022.

As in each of our prior assessments, I begin by recognizing the sustained effort, professionalism, and good faith demonstrated by City leadership, the Springfield Police Department ("SPD"), and the many individuals who have remained steadfastly committed to this reform process. Throughout this engagement, the City has consistently shown a willingness to confront challenges directly, make necessary adjustments, and invest in meaningful, lasting change. The continued partnership with DOJ and the thoughtful, constructive involvement of community members have been essential to this progress.

Since our last report, the City and SPD have maintained a clear and deliberate focus on addressing the remaining requirements of the Agreement. That work—discussed in the sections that follow—has been undertaken with urgency, discipline, and a strong sense of shared responsibility. Equally important, the City has developed a comprehensive and forward-looking sustainment framework, informed in significant part by community input, designed to ensure that the reforms achieved under this Agreement are not only preserved, but strengthened over time.

The Settlement Agreement contemplated completion by April 2026. As this report is issued, that milestone has been reached, and the CET's contractual engagement soon concludes. It is therefore appropriate to recognize both the substantial progress achieved and the foundation that has been established for the future. The transformation reflected in this work is the product of sustained leadership, organizational commitment, and meaningful collaboration between the parties, and with the community.

In assessing the City's compliance with the Settlement Agreement, the CET has applied the standard set forth in Paragraph 286 of the Agreement. Paragraph 286 establishes two alternative pathways for a finding of compliance: whether the City and the Springfield Police Department have met the material requirements of the Agreement, **or** whether SPD has demonstrated sustained and continuing improvement in constitutional policing. Satisfaction of either standard is sufficient.

Consistent with its role as a neutral evaluator, the CET has assessed both pathways in reaching its conclusions. The analysis reflected in this report is grounded in a comprehensive review of policies, training, investigative practices, supervisory oversight, and outcome data. It also draws on trends and findings documented in the CET's prior bi-annual reports, allowing for a longitudinal assessment of performance.

Based on the totality of this evidence, the CET finds that the City satisfies both prongs of Paragraph 286. The data and examples included in this report—viewed alongside the progression documented in earlier reports—demonstrate that SPD has not only met the material requirements of the Agreement, but has also achieved sustained and continuing improvement in key areas of constitutional policing. While Paragraph 286 does not require a separate finding regarding the

durability of reforms, the CET has also considered whether these improvements are likely to be maintained over time, particularly in light of the City's sustainment planning and related provisions of the Agreement.

Policing is an inherently complex and demanding profession. Even under the best systems, it is not possible to prevent every error, misstep, or tragedy. However, the reforms implemented through this process—grounded in constitutional policing, strengthened accountability, improved supervision, and deeper community engagement—significantly reduce the likelihood of adverse incidents and better position the Department to respond when they do occur. Just as importantly, these efforts contribute to building and sustaining public trust, which remains the cornerstone of effective policing.

The CET commends the City of Springfield, SPD, DOJ, and the community for the meaningful progress made over the life of this Agreement. The work undertaken here reflects not only compliance with specific provisions, but a broader commitment to Constitutional, professional, and community-centered policing. We are confident that the systems now in place, coupled with the City's commitment to sustainment, will support continued success and improvement beyond the term of this Agreement.

It has been an honor to support this effort.

Sincerely,

*Kathleen O'Toole*

Kathleen O'Toole, Lead Compliance Evaluator

# Progress Report on Specific Requirements

In our last report, the CET urged the City and SPD to focus on twenty-three specific Settlement Agreement paragraphs needing monitoring or additional work to achieve compliance. Additionally, subsequent to our report, the Parties identified paragraph 162 regarding Early Intervention System implementation as also needing additional work.

The CET has met regularly with the City and SPD as they have diligently worked to address these specific areas identified. Following is a summary of CET findings regarding the status of work on these paragraphs.

**Use of Force policies, training, reporting, review, and Constitutional Policing (Paragraph 19).**

Use of Force policies have been revised on a regular basis, quality training has been designed and offered each year, and reporting and review have improved significantly. Thorough reviews of force incidents start with the uninvolved supervisor investigating the incident. Additional reviews are conducted by the unit commander, a Professional Standards Unit (PSU) supervisor and, in certain cases, the Use of Force Committee (UFC). As part of this thorough review, when concerning incidents do take place and when areas for improvement are identified, supervisors are regularly identifying and directly addressing the concerns. All these steps, together with ongoing training and other actions SPD and the City have taken, are helping SPD engage in professional law enforcement in a manner that is Constitutional and lawful.

The focus of DOJ's investigation in this matter was the former SPD Narcotics Unit, eventually renamed Firearms Investigations Unit ("FIU"). Twenty-seven personnel are currently assigned to the FIU. The unit made a total of 435 arrests in 2023, 352 arrests in 2024, and 372 in 2025. In 2024, FIU personnel used force in seventeen incidents, fourteen at Level Two and three at Level Three.

In 2025, FIU personnel continued to use relatively low levels of force and to use force infrequently, especially given the fact that many of those arrested were armed or believed to be armed with firearms. Specifically, in 2025, FIU personnel applied force to thirty-four individuals in twenty-four incidents including seventeen at Level Two and seven at Level Three. When reviewing 2025 FIU force cases, the CET identified only one force application that was notable, resulting in minor abrasions to the armed subject. The CET found that FIU supervisors and commanders are now routinely reviewing force applications thoroughly, identifying any areas that need to be addressed or that could be improved, and taking action to address identified issues.

**De-escalation (Paragraph 20):**

Through audits of cases, the CET noted several good examples of deescalation and intervention. In one instance, a fellow officer intervened by pushing a colleague away in an emotionally charged incident. The CET also identified several incidents where an FIU officer escalated the situation inappropriately. SPD supervisors identified these incidents and took action to address

the concerns, acting to counsel and train involved personnel. The CET observed substantial improvement in subsequent incidents.

**Investigation and review of force incidents (Paragraphs 41, 44, 45, 54, 56, 57 and 58):**

In higher level Use of Force cases (Levels Three through Five), the Settlement Agreement requires that supervisors attempt to obtain the statement of the subject of the use of force. These statements are now being obtained on a regular basis.

The CET has seen great progress in supervisory review of force cases. Uninvolved supervisors are responding to the scene of force incidents when required, and higher-level supervisors are reviewing incidents involving supervisory personnel. Supervisors are routinely completing through reviews, identifying issues requiring feedback or counseling and addressing those issues directly.

**Force Investigation Trained Supervisors (Paragraphs 63-67):**

The Settlement Agreement requires that Force Investigation Trained (FIT) Supervisors with specialized training respond to and investigate the most serious uses of force by SPD personnel (Level Five). SPD has selected supervisors for FIT, and the CET has reviewed and approved the specialized training program for these investigators.

**Training for new FIU members (Paragraph 76):**

Each new member of FIU receives specialized training from unit supervisors upon assignment to the unit. The CET has reviewed and approved this training. In addition to the unit's annual training, new personnel are sent to specialized training classes as they become available.

**IIU complaint investigations and training (Paragraphs 100 and 113):**

The CET has seen substantial improvement in the thoroughness of IIU investigations in our most recent audit. The City developed, with community input, a comprehensive manual for the Internal Investigations Unit (IIU). In addition to training regarding that manual, IIU members attended specialized training specific to IA investigations late in 2024 and recently participated in a two-day training class covering best practices in interviewing techniques. To increase transparency, anonymized summaries of completed IIU investigations and dispositions are now being posted publicly on SPD's website. Anonymized summaries of "Preliminary Investigations of Employees" (PIE's) investigated by supervisors are also posted on the SPD's website.

**Use of force and IIU analysis and audit reporting (Paragraphs 137-138):**

The City and SPD are meeting their ongoing obligations for data assessments and public posting of data. The 2024 and 2025 use of force reports are posted on SPD's website, along with the 2025 force data that will be included in the 2026 use of force report shortly.

Data regarding IIU is publicly available in two places. SPD's web site has anonymized summaries of each complaint. Additionally, the Board of Police Commissioners' annual reports, published on SPD's and the City's websites, include data regarding all IIU cases, including those referred to the Board for review. In addition to this work currently being done, the City Solicitor's Office intends, as documented in the sustainment plan, to conduct regular audits of IIU cases, taking over and continuing these audits that have been done by the CET.

**Supervision (Paragraph 150):**

SPD has invested in the development of its supervisors through specialized supervisory training and other resources, and the caliber of supervisors' work demonstrates their diligence and care for the community, the organization, and their personnel.  When reviewing UOF and IIU cases, the CET has seen clear evidence that supervisors across the organization, including those in FIU, are consistently conducting thorough, high-quality investigations, reviews, and documentation of force.  Counseling and support are evident, and systems have been developed to document supervisory actions.

**Early Intervention System (Paragraph 162):**

Using the recently acquired Axon Standards software suite, SPD has developed and implemented a robust Early Intervention System (EIS). The intent of this system is to identify officers who may benefit from non-disciplinary individualized interventions.  The CET has reviewed and approved SPD's implementation of their EIS.

**Body Worn Cameras (Paragraphs 171-172):**

SPD has implemented the required body-worn camera (BWC) protocols and switched in 2025 to using Axon body-worn cameras. In its review of FIU cases and those involving uniformed personnel, the CET is finding relatively few issues with BWC activation, and the majority of these are being addressed by reviewing supervisors.

**Sustainment Plan (Paragraph 225):**

As detailed in the next section below, the City and SPD have developed a robust sustainment plan. The goal of this plan is to maintain the standards set out in the Settlement Agreement, and to continually improve the organization going forward.

The Professional Standards Unit has worked tirelessly to address the requirements of the Settlement Agreement.  Each year the unit has expanded and now has the responsibility of overseeing all departmental training.  The Superintendent has indicated the unit will remain in place indefinitely to ensure that SPD policies, training, and practices align with Constitutional policing and best practices.

The City Solicitor's Office has provided excellent support to the Board of Police Commissioners (BPC) and the Internal Investigations Unit (IIU).  The City Solicitor will assign a designated attorney responsible for supporting policies, training and other issues related to BPC and IIU.

The Springfield community will also be key stakeholders in the ongoing sustainment plan, helping to provide input, direction, and external observations going forward.

## Sustainment Plan

Sustainment is a critical component of any successful reform effort. While the implementation of new policies, training, and accountability systems is essential, it is the consistent application and reinforcement of those measures over time that ultimately determines their impact. Sustained attention to these areas is necessary to maintain professionalism, reinforce legitimacy, and continue building and preserving community trust.

Although the timeline established in the original Settlement Agreement calls for expiration on April 28, 2026, the CET notes that the City and the SPD have taken deliberate and thoughtful steps to ensure continuity of reform through the development of a sustainment plan. This forward-looking approach reflects an understanding that the work undertaken through this process must endure well beyond the formal conclusion of the Agreement.

The City's sustainment plan is structured around three key components:

First, the SPD's Professional Standards Unit ("PSU") will continue to play a central role in maintaining accountability and operational integrity. This unit will review all use of force incidents to ensure that supervisors and the chain of command are responding appropriately and consistently, thoroughly reviewing cases, providing mentoring and guidance when appropriate, and holding officers accountable when necessary. PSU will also continue to review and develop policies to ensure they stay current with professional policing practices. Additionally, PSU now oversees training and will continue to develop and deliver relevant, forward-looking instruction aligned with adult learning principles. This includes training designed to address emerging issues, reinforce best practices, and ensure that officers are well-equipped to meet the evolving demands of modern policing.

Second, the City Solicitor's Office will maintain its active support of the Board of Police Commissioners and will lead a team responsible for auditing IIU investigations. Through ongoing guidance, training, and technical assistance, the Solicitor's Office will help ensure that the Board continues to perform its oversight responsibilities effectively, fairly, and in accordance with applicable legal and policy frameworks. This support to the Board, while furthering high quality, thorough IIU investigations through regular audits, is essential to sustaining strong governance, accountability, and community trust.

Third, SPD has worked collaboratively with community representatives to develop a clear roadmap for continued engagement, transparency, and partnership. This component of the sustainment plan recognizes that community involvement is not ancillary, but fundamental, to effective policing. Ongoing dialogue, shared problem-solving, and openness will be critical to maintaining the trust that has been strengthened throughout this process.

Taken together, these elements reflect a meaningful and credible commitment to sustaining reform. The CET commends the City and SPD for recognizing that the conclusion of the

Settlement Agreement is not an endpoint, but a transition to a phase in which these practices, now institutionalized, must be maintained, reinforced, and continuously improved.

## Motion to Terminate

The CET acknowledges and supports a motion soon to be filed to terminate the Settlement Agreement. The motion will provide a detailed and comprehensive accounting of the Agreement's provisions and the steps taken by the City and the SPD to meet those requirements.

Applying the standard set forth in Paragraph 286 of the Settlement Agreement, the Compliance Evaluator Team suggests that the City of Springfield and the Springfield Police Department have achieved compliance as defined by the Agreement.

Paragraph 286 establishes an alternative standard under which compliance may be demonstrated by either (1) meeting the material requirements of the Agreement, or (2) demonstrating sustained and continuing improvement in constitutional policing. Satisfaction of either standard is sufficient. Based on the assessment reflected in this report, the CET believes the City satisfies both.

As detailed throughout this report, SPD has implemented the policies, training, supervisory structures, and accountability mechanisms required by the Agreement. The evidence—including data analysis, case reviews, and assessments of investigative and supervisory performance— demonstrates alignment with the material requirements of the Agreement.

Independently, the CET finds that SPD has demonstrated sustained and continuing improvement in constitutional policing. This conclusion is supported by consistent patterns observed across multiple reporting periods, as documented in both this report and prior CET reports. These patterns reflect measurable and meaningful progress in areas such as use-of-force review, supervisory accountability, internal investigations, and training development.

Although Paragraph 286 does not require a separate determination regarding the durability of reforms, the CET notes that the City has taken affirmative steps to promote the continuation of these improvements, including the development of a sustainment plan consistent with other provisions of the Agreement. These efforts further reinforce the conclusion that the progress achieved under the Agreement is likely to be maintained over time.

Accordingly, because the City satisfies both alternative criteria set forth in Paragraph 286, the CET concludes that the standard for compliance under the Settlement Agreement has been fully met.

Throughout this process, the CET has served as a neutral, independent representative of the Court. Our role has been to assess compliance, validate progress, and provide objective analysis based on the evidence presented and our direct observations over the course of this engagement. While the ultimate determination rests with the Court, it is the considered view of the CET that there is a compelling and well-supported case for termination. The progress achieved is both substantial and meaningful, and the framework established by the City and SPD demonstrates the

capacity to sustain these reforms moving forward. The CET respectfully submits this position for the Court's consideration.

# Conclusion

From the outset of this engagement, the CET emphasized that meaningful and timely progress would be achievable if all stakeholders—the City of Springfield, the Springfield Police Department, the Department of Justice, community representatives, and the CET—worked collaboratively, respectfully, and in good faith to meet the requirements of the Settlement Agreement. The record reflected in this final report demonstrates that this shared commitment was not only aspirational, but real. It is, in large measure, the reason the parties have reached this point within the timeframe originally contemplated.

Over the life of this Agreement, the City and SPD have undertaken difficult and, at times, complex reforms requiring sustained leadership, cultural adaptation, and organizational discipline. The DOJ's steady engagement and the community's consistent, constructive participation have been equally vital. Together, these efforts have produced tangible improvements in policy, training, supervision, accountability, and community engagement—laying a durable foundation for constitutional, effective, and trusted policing in Springfield.

This process has not been without challenges. Reform of this magnitude rarely proceeds in a straight line. There have been obstacles, moments of recalibration, and the inevitable pressures that accompany meaningful institutional change. Yet, the parties remained aligned in purpose and committed to progress, demonstrating that even in a demanding environment, principled collaboration can yield lasting results.

As the CET's work concludes, we do so with confidence that the City has both the capacity and the commitment to sustain and build upon these reforms. The systems, structures, and expectations established through this process are designed not as endpoints, but as enduring mechanisms for continuous improvement, accountability, and service to the community.

We also hope that the experience in Springfield serves as a model for other jurisdictions undertaking similar efforts. It illustrates that reform and innovation in policing are most effective when they are grounded in transparency, informed by community voice, and carried forward through genuine partnership among all stakeholders.

The CET extends its appreciation to the City of Springfield, SPD, DOJ, and the many community members who contributed their time, insight, and energy to this work. Their collective efforts have positioned Springfield to move forward with strength, integrity, and a renewed foundation of public trust

APPENDIX A

## Compliance Evaluator Team

Members of the CET welcome opportunities to engage with representatives of the parties and the Springfield community.  For those we have not met in person or during virtual community meetings, the biographies below should provide an overview of our diverse experience in modern policing.



### Kathleen M. O'Toole | Lead Compliance Evaluator

O'Toole is a lawyer and career police officer who has earned an international reputation for her principled leadership and reform efforts. She currently serves as president of O'Toole Associates, LLC and as a partner at 21st Century Policing Solutions.

In 2018, O'Toole completed her service as Chief of Police in Seattle, Washington where she led the Seattle Police Department through a major transformation project. In addition to addressing the requirements of a settlement agreement between the US Department of Justice and the City, she introduced leading-edge business practices and operational strategies that reduced crime and enhanced community trust.

O'Toole also chaired the Commission on the Future of Policing in Ireland. In September 2018, the Commission presented its findings and recommendations for sweeping reforms to An Garda Síochána, the Irish national police service. She had previously served a six-year term as Chief Inspector of the Garda Síochána Inspectorate, an oversight body responsible for advising the Irish Minister of Justice and recommending best practices for policing and security.

Earlier in her career, O'Toole rose through the ranks of local and state policing in Massachusetts. She began her career as a beat cop in the Boston Police Department and was assigned to numerous patrol, investigative, undercover, supervisory and management positions. She served as Superintendent (Chief) of the Metropolitan District Commission Police and Lieutenant Colonel overseeing Special Operations in the Massachusetts State Police. She was later appointed Massachusetts Secretary of Public Safety and Boston Police Commissioner.

O'Toole has worked on other high-profile reform projects. In 1998-1999, she was a member of the Independent Commission on Policing in Northern Ireland (The Patten Commission). The Commission published recommendations that transformed policing there as part of the Peace Process. In 2009, she served on a four-person panel that created the blueprint for reforming the Northern Ireland Prison Service. She was a member of the Independent Commission on Policing in England and Wales that published findings in late 2013. She also served as Joint Compliance Expert overseeing an agreement between the US Department of Justice and the Town of East Haven, CT to ensure constitutional policing. She continues to serve as a consultant to several federal, state and local government agencies.

O'Toole earned a BA from Boston College, JD from New England School of Law, and PhD from the Business School of Trinity College Dublin. She is a life member and served on the board of directors of the International Association of Chiefs of Police. She also served as a board member and treasurer of the Police Executive Research Forum.



### Rodney D. Monroe | Compliance Evaluator

Retired Chief Rodney Monroe is an accomplished and highly respected subject matter expert in community policing and police reform. With over 40 years of experience in law enforcement, retiring as Assistant Chief of Police in Washington, D.C., and continuing to serve as Chief of Police for 15 years in three cities, he is now sharing valuable knowledge and expertise with various law enforcement entities.

Under his leadership as Chief of Police in Charlotte, NC, Richmond, VA, and Macon, GA, historical reductions in violent crime were reached. These departments also experienced a significant increase in police and community relationships through the development and implementation of innovative programs and engagements.

Chief Monroe continues his police reform efforts by partnering with noted professional organizations providing consulting services and subject matter expertise in collaborative reform projects, critical incident reviews, violence reduction projects, body worn camera programs, and the handling of mass demonstrations and special events.

He served as Monitor for Department of Justice Federal Consent Decree in Meridian, MS. He currently serves as the Deputy Monitor for the Chicago Police Department's Consent Decree. His focus areas include, Use of Force, Accountability/Transparency, Supervision, Training, Officer Wellness and Safety, and Hiring, Recruitment, and Promotion.

Chief Monroe has served as an Expert for the USDOJ Civil Rights Division in conducting Pattern and Practices investigations in the Louisville Metro Police Department, the Memphis Police Department, the Louisiana State Police, and the Mt. Vernon Police Department.

Additionally, Chief Monroe has provided subject matter expertise on several other projects, including conducting a Racial Bias Audit for the City of Charleston, SC; North Charleston Collaborative Reform; and Minneapolis Critical Incident Review. Chief Monroe served as a Strategic Site Liaison for the Department of Justice, Bureau of Justice Assistance National Public Safety Partnership (PSP), National Body Worn Camera Program, and Safer Neighborhoods through Precision Policing Initiative (SNPPI) TTA programs.



### Natalia M. Delgado | Compliance Evaluator

Attorney Natalia Delgado left private practice in 2009 to begin her career in government, serving as Associate General Counsel with the Office of Illinois Governor Pat Quinn. Delgado had principal responsibility for addressing the legal issues of several State boards and agencies, including the Illinois State Police, Prisoner Review Board, and the Department of Corrections. In addition,

Delgado managed Executive Clemency, leading a team reviewing petitions and making recommendations to the Governor, ultimately acting on nearly 5,000 petitions.

Delgado went on to serve as Deputy General Counsel and Chief of Litigation for the Illinois State Police. Her responsibilities included managing the litigation pending against the Department and its officers, prosecuting officers administratively for alleged policy violations, making policy recommendations, drafting proposed legislation, and testifying before the legislature. Delgado also created curriculum and provided training to sworn officers and forensic scientists on various topics including Civil Rights & Civil Liabilities, Responsibilities of Field Training Officers, Search & Seizure, Bias Based Policing and Civil Deposition Preparation. While there, Delgado received a Meritorious Service Medal, awarded for outstanding achievements contributing to the efficiency and effectiveness of the Department.

Delgado next served as Deputy Director of Policy at the Cook County State's Attorney's Office, where she coordinated the planning, development and execution of several new policy and research efforts. Delgado leveraged relationships with law enforcement partners and advocates to educate and train on new initiatives and developed multidisciplinary teams to coordinate investigations and support services.

Delgado went on to serve as City Prosecutor in the City of Chicago, managing the attorneys and department responsible for prosecuting criminal and administrative violations of the Chicago Municipal Code. Delgado's practice also included civil defense of Freedom of Information Act litigation pending against City Departments in circuit court.

Delgado currently serves as General Counsel for the Illinois Commerce Commission, the state agency responsible for overseeing electric, natural gas, telecommunications, water and sewer public utility companies in the state. The Commission employs close to 300 people and operates with an annual budget of approximately 65 million dollars.

Delgado received a Bachelor of Arts Degree from Colgate University and a Juris Doctor from DePaul University School of Law. She is bilingual in Spanish and English.



### Michael Teeter | Compliance Evaluator

Mike Teeter is an educator and career police officer who serves as a police practices expert providing training, consulting, and expert witness services related to leadership, use of force, policy, significant incidents, accountability, human resources, and training. He uses the extensive experience garnered leading force investigations, training, policy development, human resources, and force review boards for the Seattle Police Department during Seattle's reform journey to help other organizations improve and reform their processes, practices, training, and leadership development. The overall goal of Teeter's work is to improve public trust and confidence in law enforcement through meaningful reform, timely and relevant training, solid supervision and effective accountability systems and measures including thorough, objective, and transparent investigations of police actions. In addition to building community trust and confidence, this work is intended to improve professionalism, wellness, and officer safety and ultimately, to reduce force related injuries and deaths recognizing the sanctity of human life.

Teeter rose through the ranks of the Seattle Police Department where he served for nearly 30 years before retiring in 2022 as a Captain. He has a broad range of experience which has prepared him to serve others

as a consultant and expert, and to teach current and aspiring criminal justice professionals. In addition to the assignments noted above, Teeter commanded the Seattle Police West Precinct, leading a team of 200 sworn officers providing front line police services to a daytime population exceeding 260,000 in the heart of Seattle's downtown and tourist core. Other roles he's held in his career include impaired driving enforcement, drug recognition expert (DRE), field training officer (FTO), internal investigations sergeant and lieutenant, patrol sergeant and shift commander, and recruiting/background investigation lieutenant.

Teeter is now serving as the Graduate Program Director for Salve Regina University's online criminal justice and cybersecurity program. He teaches graduate level criminal justice courses, advises students and is responsible for the overall content and quality of this very popular degree program.

In addition to his work at Salve Regina, Teeter's current consulting work includes serving as an expert witness in police deadly force incidents, serving on the Springfield Compliance Evaluator team, and conducting leadership training for the Washington DC Metropolitan Police Department and Washington State police leaders.

Teeter earned two Bachelor of Science Degrees from the University of Washington and a Master of Science Degree from the University of Southern California.

APPENDIX B

## The Settlement Agreement - Synopsis

The following is a synopsis of the process that led to the Settlement Agreement and this ongoing process:

On Wednesday, April 13, 2022, the United States Department of Justice Civil Rights Division ("DOJ") and the United States Attorney's Office for the District of Massachusetts ("USAO") filed in U.S. District Court a complaint and proposed consent decree ("Settlement Agreement" or "Agreement") with the City of Springfield, MA (City). This action was the culmination of an investigation, originally launched in April 2018, that concluded the Springfield Police Department's ("SPD") Narcotics Bureau engaged in a pattern or practice of excessive force that deprived individuals of their rights under the Fourth Amendment to the U.S. Constitution.

The DOJ investigation and subsequent Settlement Agreement focus primarily on the use of excessive force. The comprehensive, sixty-nine-page agreement outlines desired reforms that will improve policies, training and accountability related to SPD officers' use of force. As stated in the press release issued by the Department of Justice on the day of the filing:

"The improvements will ensure that officers avoid force whenever possible through the use of de-escalation tactics; that officers know when force can and cannot be used; and that officers report all instances where force is used. In addition, the Springfield Police Department will provide better supervision of officers and improve internal investigations of complaints of officer misconduct. When officers violate use-of-force policies, the agreement will ensure that the Springfield Police Department holds officers accountable."

The Agreement required the parties to recommend a monitor, known as "Compliance Evaluator," to be appointed by the federal judge overseeing the Agreement, Magistrate Judge Katherine A. Robertson, U.S. District Court, District of Massachusetts. Following a rigorous and competitive process, O'Toole Associates, LLC was ultimately selected for the role and appointed by Judge Robertson on August 1, 2022. Kathleen O'Toole, the company's founder and president, serves as lead compliance evaluator, assisted by Rodney Monroe, Natalia Delgado, and Michael Teeter who serve as deputy compliance evaluators. Collectively, this group is now referred to as the Compliance Evaluator Team ("CET").

As the objective representative of the Court, the CET is required to assess and report whether the requirements of the Agreement have been met and if implementation is producing the desired result - constitutional and effective policing. The CET also works with the parties to identify any barriers to compliance and provides technical assistance to SPD to overcome such barriers.

As required in Paragraph 194 of the Agreement, prior to the appointment of the CET, DOJ and the City agreed on a detailed outline of key benchmarks for implementation of the Agreement.

Under Paragraph 196 of the Agreement, the CET is also required to conduct a review every six months to determine if the city and the SPD have met the requirements of the Agreement. In doing so, the CET considers policies that have been developed and implemented, training in

15

support of those policies, and measures to ensure the SPD is consistently following and holding its personnel to the requirements of the Settlement Agreement. The review processes include both quantitative and qualitative assessments.